**SANFORD HEISLER SHARP, LLP**
Charles Field, CA Bar No. 189817
cfield@sanfordheisler.com
7911 Herschel Avenue, Suite 300
La Jolla, CA 92037
*Telephone:* (619) 577-4253
*Facsimile:* (619) 577-4250
Counsel for Plaintiff

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHY POVER, on behalf of herself and all others similarly situated,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>THE CAPITAL GROUP COMPANIES, INC.; THE BOARD OF DIRECTORS OF THE CAPITAL GROUP COMPANIES, INC., and its members; and THE U.S. RETIREMENT BENEFITS COMMITTEE OF THE CAPITAL GROUP COMPANIES, INC., and its members, Does 1–30,<br><br>　　　Defendants. | Case No.: 2:23-cv-9657 GW (PVCx)<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1. Breach of Duty of Prudence, Violation of ERISA, 29 U.S.C. § 1104<br>2. Breach of Duty of Loyalty, Violation of ERISA, 29 U.S.C. § 1104<br>3. Failure to Monitor<br><br>District Judge:　George H. Wu<br>Magistrate Judge:　Pedro V. Casillo<br>Courtroom:　　　9D<br>Filed:　　　　　11/14/2023 |

## I.    INTRODUCTION

1.    Plaintiff Cathy Pover brings this action under 29 U.S.C. § 1132(a)(2) and (3), individually and on behalf of The Capital Group Companies, Inc. Retirement Savings Plan (the "Plan") as a whole and/or a class of participants and beneficiaries of the Plan affected by the challenged conduct of the Capital Group Defendants (as defined below). Plaintiff brings this action for breach of fiduciary duty under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 ("ERISA"), against the Defendants The Capital Group Companies, Inc., the Board of Directors of The Capital Group Companies, Inc. and its members, and the U.S. Retirement Benefits Committee of The Capital Group Companies, Inc. (the "Retirement Committee") and its members (collectively, "Capital Group Defendants" or "Capital Group"). Because this is an action under 29 U.S.C. § 1132(a)(2) and (3), this Court has the subject matter jurisdiction of this matter under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

2.    The Capital Group Defendants are fiduciaries of the Plan. Accordingly, when constructing an investment line-up for the Plan, Capital Group must independently investigate and regularly monitor each of the Plan's investment options with an "eye single" to the interests of the Plan and its participants and with the care and skill of a prudent investor. The Capital Group Defendants breached their

fiduciary duty by failing to prudently monitor and failing to remove five of the Plan's proprietary investment options that suffer long-term underperformance.

3. The Retirement Committee is one of the Plan's fiduciaries that designates the investment options available under the Plan. The Retirement Committee selected five mutual funds for inclusion in the Plan: the American Funds AMCAP Fund (the "AMCAP Fund"), the American Funds Fundamental Investors Fund (the "Fundamental Investors Fund"), the Investment Company of America Fund (the "Investment Company of America Fund"), the American Funds Washington Mutual Fund (the "Washington Mutual Fund"), and the American Funds Capital World Growth and Income Fund (the "World Growth and Income Fund") (collectively, the "American Funds").

4. The American Funds are what are known as large-cap funds. As explained more fully in Section VI, large-cap funds invest primarily in stocks in the top 70% of the capitalization of the equity markets. Depending on the strategy, these markets can include both U.S. and global markets. The principal aim of large-cap funds is to provide investors with long-term growth of capital, either through capital appreciation or a combination of capital appreciation and dividends. Stock market risk and issuer risk are the two primary risks for large-cap funds.

5. The American Funds are managed by Capital Research and Management Company ("Capital Research and Management"), a subsidiary of

Capital Group Companies, Inc. Capital Research and Management is one of the oldest investment advisers in America. It manages trillions of dollars in assets and operates on a global scale. Its flagship fund, the Investment Company of America Fund, has been in continuous operation since 1937. However, success can be fleeting in the investment management business. With the passage of time, even the most talented investment adviser can lose their touch for certain investment products, causing their investment performance to fade and ultimately fall on hard times. What remains are past glories. Such is the case with the American Funds listed in this Complaint.

6.    As explained more fully in Section VIII, for nearly a decade, the American Funds have underperformed their designated benchmarks by substantial margins. For example, from January 1, 2014, through March 31, 2024, the performance of the AMCAP Fund was especially bad, as the fund underperformed its benchmark, the S&P 500 Index, by more than 45 percentage points (per cumulative return statistics generated by Morningstar, Inc. ("Morningstar")[1]).

7.    ERISA requires the Capital Group Defendants to monitor these investments prudently and impartially, with an "eye single" to the interests of the

---

[1] Morningstar is the leading provider of independent investment research products (e.g., data and research insights on managed investment products, publicly listed companies, and private capital markets) for individual investors, financial advisors, asset managers, retirement plan providers and sponsors, and institutional investors in the private capital markets in North America, Europe, Australia, and Asia.

Plan and its participants. Yet, despite a market brimming with better-performing large-cap alternatives, Capital Group retained its own American Funds as Plan investment options. To date, these American Funds have taken in nearly a billion dollars in retirement investments from Plan participants. The Capital Group Defendants' ongoing loyalty to its American Funds generates millions of dollars a year in fee income for Capital Group, but it is injurious to the Plan and its participants. The Capital Group Defendants' decision to retain the American Funds has cost participants millions of dollars in retirement savings.

8.      To remedy the Capital Group Defendants' breach of fiduciary duty, Plaintiff brings this action under 29 U.S.C. § 1132(a)(2) and (3), individually, on behalf of the Plan, and as a representative on behalf of a class of participants and beneficiaries of the Plan to enforce the Capital Group Defendants' personal liability under 29 U.S.C. § 1109(a). Plaintiff seeks to make good to the Plan as a whole all losses resulting from each breach of fiduciary duty occurring during the time period from July 1, 2019, to the date of judgment (the "Class Period"). In addition, Plaintiff seeks such other plan-wide relief for the Plan as the Court may deem appropriate.

9.      Plaintiff did not have knowledge of all material facts necessary to understand that the Capital Group Defendants breached their fiduciary duties until shortly before filing the Complaint. Further, Plaintiff does not have actual knowledge of the specifics of the Defendants' decision-making processes with

respect to the Plan, including the processes for selecting, monitoring, and removing Plan investments, because this information is solely within the possession of the Defendants at present. For purposes of this Complaint, Plaintiff has drawn reasonable and plausible inferences regarding these processes based upon the facts alleged in this Complaint.

## II.    PARTIES

### A.    Plaintiff

10.    Cathy Pover brings this suit in a representative capacity on behalf of the Plan pursuant to 29 U.S.C. § 1132(a), seeking appropriate relief under 29 U.S.C § 1109 to protect the interests of the entire Plan. Plaintiff Pover was a participant in the Plan, as defined in 29 U.S.C. § 1002(7), during the Class Period. Plaintiff Pover suffered individual injury by investing in the Plan's Washington Mutual Fund, Fundamental Investors Fund, and World Growth and Income Fund.

### B.    Defendants

11.    Capital Group Companies, Inc. is headquartered in Los Angeles, California, and is one of the world's largest investment management organizations with offices in major cities around the globe. Capital Group is the Plan's sponsor. Capital Group acts through a Board of Directors. Capital Group either exercises discretionary authority and/or discretionary control respecting management of the Plan or has delegated the duty to a group or committee of persons.

12.    The Retirement Committee administers the Plan. Members of the Retirement Committee are appointed by the Board of Directors of Capital Group. Current and former members of the Retirement Committee are fiduciaries of the Plan under 29 U.S.C. § 1002(21)(A) because they exercised discretionary authority and/or discretionary control respecting management of the Plan.

13.    Because Plaintiff is currently unaware of the identities of the individual members of the Board of Directors and the Retirement Committee, those individuals are collectively named as Defendants Does 1-30. Plaintiff will substitute the real names of the Does when they become known to Plaintiff. To the extent the Capital Group Defendants delegated any of their fiduciary functions to another person or entity, the nature and extent of which has not been disclosed to Plaintiff, the person or entity to which the function was delegated is also a fiduciary under 29 U.S.C. § 1002(21)(A) and thus alleged to be a Doe Defendant.

### III.    JURISDICTION, VENUE, AND STANDING

14.    This Court has exclusive jurisdiction over the subject matter of this action under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because it is an action under 29 U.S.C. § 1132(a)(2) and (3).

15.    This District is the proper venue for this action under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because it is the District in which the subject

Plan is administered and where at least one of the alleged breaches took place. It is also the District in which Capital Group Defendants reside.

16.    As a Plan participant and holder of the Washington Mutual Fund, Fundamental Investors Fund, and World Growth and Income Fund, Plaintiff has standing to bring claims on behalf of the Plan as a whole pursuant to 29 U.S.C. § 1132(a)(2), as she is a participant seeking appropriate plan-wide relief under 29 U.S.C. § 1109.  Thus, Plaintiff brings this suit under § 1132(a)(2) in a representative capacity on behalf of the Plan as a whole and seeks remedies under § 1109 to protect the entire Plan.

17.    Plaintiff has standing to bring claims on behalf of all holders of the American Funds because the alleged harms to holders of the American Funds can be traced to the same Capital Group conduct: the imprudent and disloyal process violative of ERISA that the Defendants used to select, monitor, and retain each and every one of the American Funds. This singular conduct with respect to the American Funds as a whole harmed each of the holders of the specific American Funds, as discussed in this Complaint.

## IV.    ERISA'S FIDUCIARY STANDARDS

### A.    Overview of ERISA's Fiduciary Duties

18.    ERISA's fiduciary duties are "the highest known to the law." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016) (en banc) (internal quotation marks

omitted). ERISA imposes strict fiduciary duties upon the Capital Group Defendants as fiduciaries of the Plan, including the duty of prudence, the duty to adhere to governing Plan documents, the duty of loyalty, and the requirement to refrain from prohibited transactions. These duties apply to all fiduciary acts, including Capital Group's monitoring and retention of investment options for the Plan.

19.    ERISA's duty of prudence requires fiduciaries to discharge their responsibilities "with the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B). Accordingly, fiduciaries must vigorously and independently investigate each of the Plan's investment options with the skill of a prudent investor.

20.    As part of its fiduciary duty, Capital Group "has a continuing duty to monitor [Plan] investments and remove imprudent ones" that exists "separate and apart from the [fiduciary's] duty to exercise prudence in selecting investments." *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015). "A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Id*. at 530. If an investment is imprudent, Capital Group "must dispose of it within a reasonable time." *Id.* (citation omitted).

21.    In addition, ERISA requires each fiduciary to act "in accordance with the documents and instruments governing the plan," except when those documents themselves violate ERISA. 29 U.S.C. § 1104(a)(1)(D). One such governing

document that fiduciaries are required to adhere to is the Plan's Investment Policy Statement.

22.    Under ERISA's duty of loyalty, Plan fiduciaries must exercise their discretion "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose" of "providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1). This requires Plan fiduciaries to act "with an eye single to the interests of the participants and [beneficiaries]." *Draney v. Westco Chemicals, Inc.*, No. 219CV01405ODWAGRX, 2023 WL 2186422, at *9 (C.D. Cal. Feb. 23, 2023), appeal dismissed, No. 23-55226, 2023 WL 5829905 (9th Cir. July 7, 2023) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982)). "A decision to make an investment may not be influenced by non-economic factors unless the investment, when judged solely on the basis of its economic value to the plan, would be equal or superior to alternative investments available to the plan." Dep't of Labor Op. Ltr. 88-16A (Dec. 19, 1988).

**B.    Fiduciary Liability Under ERISA**

23.    Under 29 U.S.C. § 1109, fiduciaries to the Plan are personally liable to make good to the Plan any harm caused by their breaches of fiduciary duty. Section 1109(a) provides in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to *such plan* any losses to the plan resulting

from each such breach, and to restore to *such plan* any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

24.    29 U.S.C. § 1132(a)(2) is the enforcement mechanism of 29 U.S.C. § 1109. It enables participants and beneficiaries to bring civil actions to seek appropriate relief under 29 U.S.C. § 1109.

## C.    Co-Fiduciary Liability

25.    ERISA provides for co-fiduciary liability where a fiduciary knowingly participates in, or knowingly fails to cure, a breach by another fiduciary. Specifically, under 29 U.S.C. § 1105(a), a fiduciary shall be liable for a breach of fiduciary duty by a co-fiduciary if:

i.    he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; [or] by his failure to comply with [29 U.S.C. § 1104(a)(1)] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach;

ii.    by his failure to comply with [29 U.S.C. § 1104(a)(1)] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

iii.    he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

## V.    THE PLAN

26.    The Plan is a profit-sharing plan as described in Section 401(k) of the Internal Revenue Code, I.R.C. § 401(k) (1986) (hereinafter denoted as "the Code") and is subject to the provisions of ERISA. The Plan is established and maintained under a written document in accordance with 29 U.S.C. § 1102(a). Capital Group is the sponsor of the Plan.

27.    The Plan provides for retirement income for approximately 11,000 Capital Group employees, former employees, and their beneficiaries (the "Plan participants"). A participant's retirement account balance primarily depends on contributions made on behalf of each employee by his or her employer, Capital Group's matching contributions, and the performance of investment options net of fees and expenses. Defendants exclusively control the selection and retention of the Plan's investment options.

28.    Based on publicly available Plan documents, Plan participants had invested over $6 billion in the Plan as of June 30, 2023. As of June 30, 2023, the Plan identified the following American Funds along with the approximate value of Plan assets invested in each fund:

| Plan Option | Value |
| --- | --- |
| AMCAP Fund | $205.1 million |
| Fundamental Investors Fund | $208.6 million |
| Investment Company of America Fund | $155.7 million |
| Washington Mutual Fund | $199.0 million |
| World Growth and Income Fund | $177.7 million |

## VI.    OVERVIEW OF LARGE-CAP STOCK FUNDS

### A.    Investment Aims

29.    The American Funds are considered large-cap stock funds. The stocks of the biggest companies typically dominate these funds. The distinguishing feature of the World Growth and Income Fund relative to the other four funds it that it has considerably more exposure to non-U.S. companies.

30.    The principal aim of large-cap funds is to provide investors with long-term growth of capital, either through capital appreciation or a combination of capital appreciation and dividends. Generally, U.S. large-cap funds invest primarily in stocks in the top 70% of the capitalization of the U.S. equity market. Global large-cap funds invest primarily in a variety of big companies whose stocks are in the top 70% of each economically integrated market where they invest, including the United States.

**B.    How Large-Cap Funds Achieve Their Aims**

**i.    Large-Cap Funds Have Distinct Investment Styles**

31.    U.S. and global large-cap funds are recognized by style. Typically, large-cap funds will pursue either a growth style, a value style, or a blend style.

32.    Large-cap funds with a growth style invest in stocks of big companies that are projected to grow faster than other large-cap stocks. Growth is defined based on fast growth (high growth rates for earnings, sales, book value, and cash flow) and high valuations (high price ratios and low dividend yields). Morningstar and Capital Group refer to the AMCAP Fund as a large-cap growth fund.

33.    Large-cap funds with a value style invest primarily in big companies that are less expensive or growing more slowly than other large-cap stocks. Value is defined based on low valuations (low price ratios and high dividend yields) and slow growth (low growth rates for earnings, sales, book value, and cash flow). None of the American Funds employ a value style.

34.    Large-cap funds with a blend style contain a balanced mixture of both growth and value styles. These funds are fairly representative of the overall U.S. stock market in size, growth rates, and price, and they tend to invest across the spectrum of U.S. industries. Owing to their broad exposure, the portfolios' returns are often similar to those of the S&P 500 Index. Morningstar and Capital Group refer

to the Fundamental Investors Fund, the Investment Company of America Fund, and the Washington Mutual Fund as large-cap blend funds.

35.     Global large-cap blend funds are similar to the funds described above, except they allocate their assets among several developed markets, including Japan, Britain, France, Germany, and the United States. Neither growth nor value characteristics predominate. Morningstar and Capital Group refer to the World Growth and Income Fund as a global large-cap blend fund.

### ii.     Active vs. Passive Management

36.     Regardless of style, the American Funds are actively managed funds; that is, the funds rely on the professional judgment of its investment adviser to make decisions about the fund's portfolio investments. The investment adviser decides which industries they wish to allocate assets to, and what stocks to buy and sell and when. The fund pays the investment adviser a fee for these services. To justify their fees, the investment adviser's primary focus is to outperform the fund's benchmark.

37.     Investment research and analysis typically drive investment decisions of actively managed funds. Factors that an investment adviser may consider include, but are not limited to, market trends, a company's financials, perceived risk of investing in the company, industry and sector outlook, and the underlying stock's performances in various market conditions. Based on their respective professional judgment, one investment adviser may like consumer cyclical stocks while another

may like healthcare stocks, while a third may like stocks whose issuers focus on environmental, social, and governance (ESG) issues.

38.    Without distinctions between portfolio holdings, all large-cap stock funds would own identical investment portfolios and have nearly identical investment performance. Active management offers investors the opportunity to earn superior returns relative to the fund's benchmarks through the astute selection of investments. Astute selection typically drives superior relative investment performance over time and distinguishes the better performing funds from the underperforming ones. Bad asset allocation and poor investment selection generally drive long-term underperformance.

**C.    Actively Managed Large-Cap Funds Share Similar Risks**

39.    The principal categories of risks for actively managed U.S. large-cap equity funds include market risk, issuer risk, risk of investing in growth-oriented stocks, risk of investing in income-oriented stocks, and active management risk. Global large-cap equity funds have the added risks associated with investing in non-U.S. markets.

40.    Market risk is the chance that stock prices overall will decline. Stock markets tend to move in cycles, with periods of rising prices and periods of falling prices, so each fund is subject to the risk that the market as a whole will fall.

41.    Issuer risk is the chance that prices of, and the income generated by, individual securities of companies held by the fund (e.g., Disney) may decline in response to various factors directly related to the issuers of such securities, including reduced demand for an issuer's goods or services, poor management performance, major litigation, investigations or other controversies related to the issuer.

42.    Investing in stocks with specific characteristics comes with its own unique risks. For example, investing in growth-oriented stocks may involve larger price swings and greater potential for loss than other types of investments. Investing in income-oriented stocks that pay dividends also has risks. The value of the fund's income-oriented stocks may decline due to a reduction or an elimination of dividend payments.

43.    Investing outside the U.S. exposes a fund to the risk that the non-U.S. stocks will lose value because of adverse political, social, economic, or market developments in the countries or regions in which the issuers operate or generate revenue. These stocks may also lose value due to changes in foreign currency exchange rates against the U.S. dollar and/or currencies of other countries. Securities markets in certain countries may be more volatile and/or less liquid than those in the United States. The risks of investing outside the United States may be heightened in connection with investments in emerging markets (e.g., Russia, China).

44.    Active management risk is the risk that the methods and analyses, including models, tools and data, employed by the investment adviser may be flawed or incorrect and may not achieve the fund's aim. This could cause the fund to lose value or its investment results to lag relevant benchmarks.

**D.    Fiduciaries Select Benchmarks to Evaluate Achievement of Potential Rewards**

45.    For an actively managed investment fund, the potential reward is that the fund will deliver positive investment returns that exceed those of its benchmark index. In evaluating the performance of a large-cap stock fund, fiduciaries of 401(k) plans and investment advisers of large-cap funds select benchmarks that they believe have comparable similar aims, risks, and potential rewards as those of the fund.

46.    One such index is the S&P 500 Index. The S&P 500 Index is independently maintained by the American credit rating agency S&P Global Ratings and is comprised of 500 of the top companies in the leading industries of the U.S. economy. S&P Global Ratings designs its S&P 500 Index to serve as an appropriate benchmark for large-cap stock portfolios. It is widely published and highly regarded as the best single gauge of large-cap U.S. stocks.

47.    A similar index to the S&P 500 Index is the Russell 1000 Growth Index. The Russell 1000 Growth Index is independently maintained by FTSE Russell, a wholly owned subsidiary of the London Stock Exchange Group. FTSE Russell is a leading global provider of benchmarking, analytics and data solutions for investors

with over 30 years in the business. The Russell 1000 Growth Index measures the performance of the large-cap growth segment of the U.S. stock market. It includes those Russell 1000 companies with relatively higher price-to-book ratios, higher forecast medium term growth and higher sales per share historical growth (i.e., growth companies).

48.     For global large-cap stock funds, there is the Morgan Stanley Capital International All Country World Index (MSCI ACWI). The MSCI ACWI is Morgan Stanley's flagship global equity index. It captures large- and mid-cap representation across 23 Developed Markets (DM) and 24 Emerging Markets (EM) countries. With 2,888 constituents, the index covers approximately 85% of the global investable equity opportunity set.

49.     ERISA requires fiduciaries of a defined contribution plan to disclose to each participant "the name and returns of an appropriate broad-based securities market index over the 1-, 5-, and 10-calendar year periods" as a benchmark for each designated investment option. 29 C.F.R. § 2550.404a-5(d)(1)(iii) (emphasis added). A defined-contribution plan must provide information that is "complete and accurate." 29 C.F.R. § 2550.404a-5(b)(1).

## VII.   THE AMERICAN FUNDS AND THEIR BENCHMARKS

**A.    AMCAP Fund**

50.    The AMCAP Fund's aim is to provide investors with long-term growth of capital.

51.    The AMCAP Fund pursues its objective by actively investing primarily in common stocks of large U.S. companies that have solid long-term growth records and the potential for good future growth. The AMCAP Fund also invests in common stocks and other securities of issuers domiciled outside the United States to a limited extent.

52.    Capital Research and Management and Morningstar refer to the AMCAP Fund as a large-cap growth fund. Currently, approximately 70% of the AMCAP Fund's assets are invested in large-cap stocks. Approximately 85% of AMCAP Fund's assets are invested in U.S. stocks and less than 10% are invested in non-U.S. stocks. The remainder is invested in cash and cash equivalents.

53.    The AMCAP Fund's potential rewards are that it will generate investment returns that outperform its benchmark index. The AMCAP Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) investing in growth-oriented stocks, and, to a lesser degree, risks related to international stocks. Also, the AMCAP Fund, as an actively managed fund, is exposed to active management risk.

i.      **Comparator 1: American Century Growth Fund**

54.    The American Century Growth Fund has similar aims, risks, and potential rewards to those of the AMCAP Fund.

55.    Like the AMCAP Fund, the American Century Growth Fund seeks long-term capital growth by actively investing in the common stocks of larger-sized U.S. growth companies. Although the Fund invests primarily in U.S. securities, the Fund may invest in non-U.S. stocks to a limited extent.

56.    Morningstar identifies the American Century Growth Fund as a large-cap growth fund. Approximately 90% of its portfolio is invested in large-cap stocks. Approximately 92% of the American Century Growth Fund's assets are invested in U.S. stocks and less than 10% are invested in non-U.S. stocks. The remainder is invested in cash and cash equivalents.

57.    The American Century Growth Fund's potential rewards are that the Fund will generate positive investment returns that outperform its benchmark index. The American Century Growth Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) investing in growth-oriented stocks, and to a lesser degree, risks related to international stocks. Also, the American Century Growth Fund, as an actively managed fund, is exposed to active management risk.

58.    Given the similarities in their investment strategies and the types of stocks the two funds own, the aims, risks, and potential rewards of the American

Century Growth Fund are similar to those of the AMCAP Fund. This makes the American Century Growth Fund a meaningful comparator.

### ii.    Comparator 2: Delaware Ivy Large Cap Growth Fund

59.    The Delaware Ivy Growth Fund has similar aims, risks, and potential rewards to those of the AMCAP Fund. Macquarie Group Limited ("Macquarie") is the investment adviser of the Delaware Ivy Growth Fund.

60.    The Delaware Ivy Growth Fund seeks long-term capital growth by actively investing in the common stocks of larger-sized U.S. growth companies. Although the Delaware Ivy Growth Fund invests primarily in U.S. securities, the Fund may invest in non-U.S. stocks to a limited extent.

61.    Morningstar and Macquarie identify the Delaware Ivy Growth Fund as a large-cap growth fund. Approximately 79% of the Delaware Ivy Growth Fund's portfolio is invested in large-cap stocks. Approximately 96% of the Delaware Ivy Growth Fund's assets are invested in U.S. stocks and less than 10% are invested in non-U.S. stocks. The remainder is invested in cash and cash equivalents.

62.    The Delaware Ivy Growth Fund's potential rewards are that the Fund will generate positive investment returns that outperform its benchmark index. The Delaware Ivy Growth Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) investing in growth-oriented stocks, and, to a lesser degree, risks related

to international stocks. Also, the Delaware Ivy Growth Fund, as an actively managed fund, is exposed to active management risk.

63.    Given the similarities in their investment strategies and the types of stocks the two funds own, the aims, risks, and potential rewards of the Delaware Ivy Growth Fund are similar to those of the AMCAP Fund. This makes the Delaware Ivy Growth Fund a meaningful comparator.

**iii.    Comparator 3: MFS Massachusetts Investors Growth Stock Fund**

64.    The MFS Massachusetts Investors Growth Stock Fund has similar aims, risks, and potential rewards to those of the AMCAP Fund.

65.    The MFS Massachusetts Investors Growth Stock Fund seeks capital appreciation by investing primarily in large-cap common stocks. The Fund focuses on investing in the stocks of companies it believes to have above average earnings growth potential compared to other companies (growth companies).

66.    Morningstar and MFS identify the MFS Massachusetts Investors Growth Stock Fund as a large-cap growth fund. Approximately 78% is invested in large-cap stocks. Approximately 94% of the MFS Massachusetts Investors Growth Stock Fund's assets are invested in U.S. stocks and less than 10% are invested in non-U.S. stocks. The remainder is invested in cash and cash equivalents.

67.    MFS Massachusetts Investors Growth Stock Fund's potential rewards are that the Fund will generate positive investment returns that outperform its

benchmark index. The MFS Massachusetts Investors Growth Stock Fund's principal risks were related to (1) market risk, (2) issuer risk, and (3) investing in growth-oriented stocks, and, to a lesser degree, risks related to international stocks. Also, the MFS Massachusetts Investors Growth Stock Fund, as an actively managed fund, is exposed to active management risk.

68.    Given the similarities in the two funds' investment strategies and the types of stocks the two funds own, the aims, risks, and potential rewards of the MFS Massachusetts Investors Growth Stock Fund are similar to those of the AMCAP Fund. This makes the MFS Massachusetts Investors Growth Stock Fund a meaningful comparator.

### iv.    Comparator 4: S&P 500 Index

69.    In their Participant Fee Disclosure Notice, Defendants disclose to the Plan participants that the AMCAP Fund is benchmarked to the S&P 500 Index.[2] In its Registration Statement filed with the U.S. Securities and Exchange Commission on Form N-1A, the Fund also discloses it is benchmarked to the S&P 500 Index.

70.    By disclosing the S&P 500 Index to Plan participants, and to public investors at large, as the appropriate benchmark for the AMCAP Fund, the

---

[2] Under U.S. Department of Labor regulations, Defendants must provide Plan participants with performance benchmarks that are "appropriate broad-based securities market index[es]." *See* 29 C.F.R. § 2550.404a-5(d)(1)(iii). Further, any benchmark information that Defendants provide to Plan participants must not be "inaccurate or misleading." 29 C.F.R. § 2550.404a-5(d)(2)(ii).

Defendants necessarily conclude that the S&P 500 Index is, in fact, representative of the investment option and thus shared similar aims, risks, and rewards. Defendants cannot claim the S&P 500 Index is not a meaningful benchmark for the AMCAP Fund.

71.     By virtue of the similarities in their respective market capitalizations, the S&P 500 Index and the AMCAP Fund share similar aims, rewards, and levels of risk, including market risk and issuer risk. This makes the S&P 500 Index a meaningful benchmark for the AMCAP Fund.

72.     According to Morningstar, from January 1, 2014 through March 31, 2024, the AMCAP R6 Fund underperformed the S&P 500 Index by 45 percentage points – 244% versus 199%.

**v.     Comparator 5: Russell 1000 Growth Index**

73.     By virtue of the similarities in their respective market capitalizations and growth investment styles, the Russell 1000 Growth Index and the AMCAP Fund also share similar aims, rewards, and levels of risk, including market risk and issuer risk. Moreover, given AMCAP Fund's tilt toward growthier stocks, Morningstar identifies the Russell 1000 Growth Index as the category benchmark for the AMCAP Fund. This makes the Russell 1000 Growth Index another meaningful benchmark for the AMCAP Fund.

74.    According to Morningstar, from January 1, 2014 through March 31, 2024, the AMCAP R6 Fund underperformed the Russell 1000 Growth Index by 146 percentage points – 345% versus 199%.

**B.    Fundamental Investors Fund**

75.    The Fundamental Investors Fund's investment aim is to achieve long-term growth of capital and income. The Fund pursues this aim by primarily investing in common stocks of companies that appear to offer superior opportunities for capital growth and most of which have a history of paying dividends. In addition, the Fund may invest in securities of issuers domiciled outside the United States.

76.    Capital Research and Management and Morningstar refer to the Fundamental Investors Fund as a large-cap blend fund. Approximately 75% of the Fundamental Investors Fund's assets are invested in large-cap stocks. Approximately 75% of Fundamental Investors Fund's assets are invested in U.S. stocks and approximately 20% are invested in non-U.S. stocks. The remainder is invested in cash and cash equivalents.

77.    The Fundamental Investors Fund's potential rewards are to generate positive investment returns that outperform its benchmark index. The Fundamental Investors Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) investing in growth-oriented stocks, income-producing stocks, and international

stocks. Also, the Fundamental Investors Fund, as an actively managed fund, is exposed to active management risk.

### i.    Comparator 1: GMO Quality Fund

78.    The GMO Quality Fund has similar aims, risks, and potential rewards to those of the Fundamental Investors Fund.

79.    The GMO Quality Fund's aim is to generate total return, i.e., growth of capital and income. The GMO Quality Fund pursues its aim by investing primarily in the stock of companies that will deliver a high level of return through capital appreciation and dividends. The Fund may invest in securities of issuers domiciled outside the United States.

80.    Morningstar refers to the GMO Quality Fund as a large-cap blend fund. Approximately 95% of the GMO Quality Fund's assets are invested in large-cap stocks. Approximately 76% of the GMO Quality Fund's assets are invested in U.S. stocks and approximately 21% are invested in non-U.S. stocks. The remainder is invested in cash and cash equivalents.

81.    The GMO Quality Fund's potential rewards are that the Fund will generate positive investment returns that outperform its benchmark index. The GMO Quality Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) investing in growth-oriented stocks, income-producing stocks, and international

stocks. Also, the Fundamental Investors Fund, as an actively managed fund, is exposed to active management risk.

82.     Given the similarities in the two funds' investment strategies and the types of stocks the two funds own, the aims, risks, and potential rewards of the GMO Quality Fund are similar to those of the Fundamental Investors Fund. This makes the GMO Quality Fund a meaningful comparator.

**ii.    Comparator 2: Vanguard PRIMECAP Fund**

83.     The Vanguard Group, Inc. ("Vanguard") PRIMECAP Fund has similar aims, risks, and potential rewards to those of the Fundamental Investors Fund.

84.     The Vanguard PRIMECAP Fund's investment aim is to achieve long-term capital appreciation. The Fund pursues this aim by investing mainly in common stocks of companies that the adviser believes have favorable prospects for capital appreciation. The Fund may invest up to 25% of its assets in non-U.S. stocks.

85.     Morningstar refers to the Vanguard PRIMECAP Fund as a large-cap blend fund, while Vanguard refers to it as a large-cap growth fund. Approximately 79% of the Vanguard PRIMECAP Fund's assets are invested in large-cap stocks. Approximately 85% of the Vanguard PRIMECAP Fund's assets are invested in U.S. stocks and approximately 13% are invested in non-U.S. stocks. The remainder is invested in cash and cash equivalents.

86.    The Vanguard PRIMECAP Fund's potential rewards are that the Fund will generate positive investment returns that outperform its benchmark index. The Vanguard PRIMECAP Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) investing in growth-oriented stocks, income-producing stocks and international stocks. Also, the Vanguard PRIMECAP Fund, as an actively managed fund, is exposed to active management risk.

87.    Given the similarities in the two funds' investment strategies and the types of stocks the two funds own, the aims, risks, and potential rewards of the Vanguard PRIMECAP Fund are similar to those of the Fundamental Investors Fund. This makes the Vanguard PRIMECAP Fund a meaningful comparator.

### iii.    Comparator 3: Wellington CIF Large Cap Research Trust

88.    The Wellington CIF II Large Cap Research Trust (the "Wellington Trust") has similar aims, risks, and potential rewards to those of the Fundamental Investors Fund.

89.    The Wellington Trust's investment aim is to consistently outperform broad-based market indices by focusing on adding value through superior securities selection. The Wellington Trust pursues its aim by investing in equity securities of U.S. companies, emphasizing those that have above-average potential for capital appreciation. The Wellington Trust may invest up to 10% of its assets in non-U.S. stock.

90.     Morningstar identifies the Wellington Large Trust as a large-cap growth fund. Approximately 77% of the Wellington Trust's assets are invested in large-cap stocks. Approximately 94% of the Wellington Trust's assets are invested in U.S. stocks and approximately 5% are invested in non-U.S. stocks. The remainder is invested in cash and cash equivalents.

91.     The Wellington Trust's potential rewards are that the Trust will generate positive investment returns that outperform its benchmark index. The Wellington Trust's principal risks are related to (1) market risk, (2) issuer risk, and (3) investing in growth-oriented stocks, income-producing stocks, and international stocks. Also, the Wellington Trust, as an actively managed fund, is exposed to active management risk.

92.     Given the similarities in the two funds' investment strategies and the types of stocks the two funds own, the aims, risks, and potential rewards of the Wellington Trust are similar to those of the Fundamental Investors Fund. This makes the Wellington Trust a meaningful comparator.

**iv.     Comparator 4:  S&P 500 Index**

93.     In their Participant Fee Disclosure Notice, Defendants disclose to the Plan participants that the Fundamental Investors Fund is benchmarked to the S&P 500 Index. In its Registration Statement filed with the U.S. Securities and Exchange

Commission on Form N-1A, the Fund also discloses it is benchmarked to the S&P 500.

94.    By disclosing the S&P 500 Index to Plan participants and public investors at large as the appropriate benchmark for the Fundamental Investors Fund, the Defendants necessarily concluded that the S&P 500 Index was, in fact, representative of the investment option and thus shared similar aims, risks, and rewards. By virtue of the similarities in their respective market capitalizations, the S&P 500 Index and the Fundamental Investors Fund share similar aims, rewards, and levels of risk, including market risk and issuer risk. This makes the S&P 500 Index a meaningful benchmark for the Fundamental Fund.

95.    According to Morningstar, from January 1, 2014 through March 31, 2024, the Fundamental Investors R6 Fund underperformed the S&P 500 Index by 27 percentage points – 244% versus 217%.

**C.    Investment Company of America Fund**

96.    The Investment Company of America Fund's aim is to achieve long-term growth of capital and income. The Investment Company of America Fund pursues its objective by actively investing primarily in common stocks. Although the fund focuses on investments in medium to larger capitalization companies, the Fund's investments are not limited to a particular capitalization size. The Fund also

invests in common stocks and other securities of issuers domiciled outside the United States to a limited extent.

97.    Morningstar and Capital Group identify the Investment Company of America as a large-cap blend fund. Approximately 85% of the Investment Company of America Fund's assets are invested in large-cap stocks. Approximately 82% of the Investment Company of America Fund's assets are invested in U.S. stocks and approximately 11% are invested in non-U.S. stocks. The remainder is invested in cash and cash equivalents.

98.    The Investment Company of America Fund's potential rewards are that the Fund will generate positive investment returns that outperform its benchmark index. The Investment Company of America Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) investing in growth-oriented stocks, small- and mid-cap stocks and, to a lesser extent, risks related to investing in international stocks. Also, the Investment Company of America Fund, as an actively managed fund, is exposed to active management risk.

i.    **Comparator 1:  T. Rowe Price Structured Research CIT**

99.    The T. Rowe Price Structured Research CIT has similar aims, risks, and potential rewards to those of the Investment Company of America Fund.

100.    The T. Rowe Price Structured Research Fund is a collective investment trust. The Fund is available only to certain qualified retirement plans and

governmental plans and is not publicly offered. Capital Group's Plan offers the American Funds in similar types of collective trust funds.

101.    The aim of the T. Rowe Price Structured Research Fund is to generate long-term capital growth through stock selection. While the majority of assets will be invested in large-capitalization U.S. common stocks, the fund may have small- and mid-capitalization and foreign exposure in keeping with fund objectives.

102.    Morningstar and T. Rowe Price refer to the T. Rowe Price Structured Research Fund as a large-cap blend fund. Approximately 83% of the T. Rowe Price Structured Research Fund's assets are invested in large-cap stocks. Approximately 96% of the T. Rowe Price Structured Research Fund's assets are invested in U.S. stocks and less than 10% are invested in non-U.S. stocks. The remainder is invested in fixed income, cash, and cash equivalents.

103.    T. Rowe Price Structured Research Fund's potential rewards are that the Fund will generate positive investment returns that outperform its benchmark index. The T. Rowe Price Structured Research Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) investing in growth-oriented stocks, and small- and mid-cap stocks and, to a lesser extent, risks related to investing in international stocks. Also, the T. Rowe Price Structured Research Fund, as an actively managed fund, is exposed to active management risk.

104.   Given the similarities in the two funds' investment strategies and the types of stocks the two funds own, the aims, risks, and potential rewards of the T. Rowe Price Structured Research Fund are similar to those of the Investment Company of America Fund. This makes the T. Rowe Price Structured Research Fund a meaningful comparator.

### ii.    Comparator 2:  Vanguard Growth and Equity Fund

105.   The Vanguard Growth and Equity Fund has similar aims, risks, and potential rewards to those of the Investment Company of America Fund.

106.   The Vanguard Growth and Equity Fund aims to provide a total return (capital appreciation plus dividend income) greater than the return of the S&P 500 Index. The Fund invests at least 65% of its assets in stocks that are included in the index. Most of the stocks held by the Fund provide dividend income as well as the potential for capital appreciation.

107.   Morningstar identifies the Vanguard Growth and Equity Fund as a large-cap blend fund. Approximately 76% of the Vanguard Growth and Equity Fund's assets are invested in large-cap stocks. Approximately 96% of the Vanguard Growth and Equity Fund's assets are invested in U.S. stocks and about 1.5% in non-U.S. stocks. The remainder is invested in cash and cash equivalents.

108.   The Vanguard Growth and Equity Fund's potential rewards are that the Fund will generate positive investment returns that outperform its benchmark index.

The Vanguard Growth and Equity Fund's principal risks were related to (1) market risk, (2) issuer risk, and (3) investing in growth-oriented stocks, small- and mid-cap stocks and, to a lesser extent, risks related to investing in international stocks. Also, the Vanguard Growth and Equity Fund, as an actively managed fund, is exposed to active management risk.

109.   Given the similarities in the two funds' investment strategies and the types of stocks the two funds own, the aims, risks, and potential rewards of the Vanguard Growth and Equity Fund are similar to those of the Investment Company of America Fund. This makes the Vanguard Growth and Equity Fund a meaningful comparator.

### iii.    Comparator 3:  JPMorgan U.S. Equity Fund

110.   The JPMorgan U.S. Equity Fund has similar aims, risks, and potential rewards to those of the Investment Company of America Fund.

111.   The JPMorgan U.S. Equity Fund aims to provide high total return from a portfolio of selected equity securities. In implementing its strategy, the Fund primarily invests in common stocks of large- and medium-capitalization U.S. companies, but it may also invest up to 20% of its assets in common stocks of foreign companies.

112.   Morningstar and JPMorgan identify the JPMorgan U.S. Equity Fund as a large-cap blend fund. Approximately 91% of the JPMorgan U.S. Equity Fund's

assets are invested in large-cap stocks. Approximately 96% of the JPMorgan U.S. Equity Fund's assets are invested in U.S. stocks and less than 10% are invested in non-U.S. stocks. The remainder is invested in fixed income, cash, and cash equivalents.

113.    JPMorgan U.S. Equity Fund's potential rewards are that the Fund will generate positive investment returns that outperform its benchmark index. The JPMorgan U.S. Equity Fund's principal risks were related to (1) market risk, (2) issuer risk, and (3) investing in growth-oriented stocks, and international stocks. Also, the JPMorgan U.S. Equity Fund, as an actively managed fund, is exposed to active management risk.

114.    Given the similarities in the two funds' investment strategies and the types of stocks the two funds own, the aims, risks, and potential rewards of the JPMorgan U.S. Equity Fund are similar to those of the Investment Company of America Fund. This makes the JPMorgan U.S. Equity Fund a meaningful comparator.

**iv.    Comparator 4:  S&P 500 Index**

115.    In their Participant Fee Disclosure Notice, Defendants disclose to the Plan participants that the Investment Company of America Fund is benchmarked to the S&P 500 Index. In its Registration Statement filed with the U.S. Securities and

Exchange Commission on Form N-1A, the Fund also discloses it is benchmarked to the S&P 500.

116.   By disclosing the S&P 500 Index to Plan participants and public investors at large as the appropriate benchmark for the Investment Company of America Fund, the Defendants necessarily concluded that the S&P 500 Index was, in fact, representative of the investment option and thus shared similar aims, risks, and rewards. By virtue of the similarities in their respective market capitalizations, the S&P 500 Index and the Investment Company of America Fund share similar aims, rewards, and levels of risk, including market risk and issuer risk. This makes the S&P 500 Index a meaningful benchmark for the Investment Company of America Fund.

117.   According to Morningstar, from January 1, 2014 through March 31, 2024, the Investment Company of America R6 Fund underperformed the S&P 500 Index by 32 percentage points – 244% versus 212%.

**D.    Washington Mutual Investors Fund**

118.   The Washington Mutual Investors Fund's aim is to produce income and to provide an opportunity for growth of principal consistent with sound common stock investing. The Fund pursues its aim by investing primarily in common stocks of established companies that are listed on, or meet the financial listing requirements of, the New York Stock Exchange and have a strong record of earnings and

dividends. The Fund may have significant exposure to a particular country, region, industry, or sector.

119.    Capital Research and Management and Morningstar refer to the Washington Mutual Investors Fund as a large-cap blend fund. Approximately 87% of the Fund's portfolio is invested in large-cap stocks. Approximately 90% of the Fund's assets are invested in U.S. stocks and approximately 5% are invested in non-U.S. stocks.  The remainder is invested in cash and cash equivalents.

120.    The Washington Mutual Investors Fund's potential rewards are to generate positive investment returns that outperform its benchmark index. The Washington Mutual Investors Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) investing in growth-oriented stocks, income-oriented stocks, and international stocks. Also, the Washington Mutual Investors Fund, as an actively managed fund, is exposed to active management risk.

### i.    Comparator 1:  JPMCB U.S. Active Core Equity CIT

121.    The JPMCB U.S. Active Core Equity Fund has similar aims, risks, and potential rewards to those of the Washington Mutual Investors Fund.

122.    The JPMCB U.S. Active Core Equity Fund is a commingled Pension Trust Fund of JPMorgan Chase Bank, N.A. The Fund is available only to certain qualified retirement plans and governmental plans and is not publicly offered. The Capital Plan offers the American Funds in similar types of trust funds.

123.    The JPMCB U.S. Active Core Equity Fund's aim is to provide high total return through superior stock selection. The Fund pursues its aim by investing primarily in a portfolio of selected large-cap stocks and in sector weightings similar to the S&P 500 Index. In implementing its strategy, the Fund may also invest up to 20% of its assets in non-U.S. stocks.

124.    Morningstar refers to the JPMCB U.S. Active Core Equity Fund as a large blend fund. Approximately 91% of JPMCB U.S. Active Core Equity Fund's assets are invested in large-cap stocks. Approximately 96% of the assets are invested in U.S. stocks and approximately 4% are invested in non-U.S. stocks. A small amount is invested in cash and cash equivalents.

125.    The JPMCB U.S. Active Core Equity Fund's potential rewards are that the Fund will generate positive investment returns that outperform its benchmark index. The JPMCB U.S. Active Core Equity Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) investing in growth-oriented stocks, and international stocks. Also, the JPMCB U.S. Active Core Equity Fund, as an actively managed fund, is exposed to active management risk.

126.    Given the similarities in the two funds' investment strategies and the types of stocks the two funds own, the aims, risks, and potential rewards of the JPMCB U.S. Active Core Equity Fund are similar to those of the Washington Mutual Fund. This makes the JPMCB U.S. Active Equity Fund a meaningful comparator.

ii.      **Comparator 2:  Goldman Sachs Large Cap Core Fund**

127.   The Goldman Sachs Large Cap Core Fund has similar aims, risks, and potential rewards to those of the Washington Mutual Investors Fund.

128.   The Fund aims to outperform the S&P 500 Index through stock selection skill. The strategy combines fundamental research with a disciplined portfolio construction process to achieve its investment objectives.

129.   Morningstar refers to the Goldman Sachs Large Cap Core Fund as a large-cap blend fund. Approximately 75% of Goldman Sachs Large Cap Core Fund's assets are invested in large-cap stocks. Approximately 96% of the assets are invested in U.S. stocks and approximately 3% are invested in non-U.S. stocks. The remainder is invested in cash and cash equivalents. The Fund may invest up to 25% percent of its total assets in foreign securities.

130.   Goldman Sachs Large Cap Fund's potential rewards are that the Fund will generate positive investment returns that outperform its benchmark index. The Goldman Sachs Large Cap Core Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) investing in growth-oriented stocks, and international stocks. Also, the Goldman Sachs Large Cap Core Fund, as an actively managed fund, is exposed to active management risk.

131.   Given the similarities in the two funds' investment strategies and the types of stocks the two funds own, the aims, risks, and potential rewards of the

Goldman Sachs Large Cap Core Fund are similar to those of the Washington Mutual Fund. This makes the Goldman Sachs Large Cap Core Fund a meaningful comparator.

### iii.        Comparator 3:  Touchstone Large Cap Focused Fund

132.    The Touchstone Large Cap Focused Fund has similar aims, risks, and potential rewards to those of the Washington Mutual Investors Fund.

133.    The Touchstone Large Cap Focused Fund's aim is to provide investors with capital appreciation. The Fund pursues its aim by investing primarily in large-cap stocks. These securities may be listed on an exchange or traded over the counter. The Fund may invest up to 35% of its assets in securities of foreign issuers.

134.    Morningstar refers to the Touchstone Large Cap Focused Fund as a large-cap blend fund. Approximately 86% of the Fund's portfolio is invested in large-cap stocks. Approximately 94% of the Fund's assets are invested in U.S. stocks and less than 1% are invested in non-U.S. stocks. The remainder is invested in cash and cash equivalents.

135.    The Touchstone Large Cap Focused Fund's potential rewards are that the Fund will generate positive investment returns that outperform its benchmark index. The Touchstone Large Cap Focused Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) investing in growth-oriented stocks, income-

oriented stocks, and international stocks. Also, the Touchstone Large Cap Focused Fund, as an actively managed fund, is exposed to active management risk.

136.   Given the similarities in the two funds' investment strategies and the types of stocks the two funds own, the aims, risks, and potential rewards of the Touchstone Large Cap Focus Fund are similar to those of the Washington Mutual Fund. This makes the Touchstone Large Cap Focus Fund a meaningful comparator.

**iv.    Comparator 4:  S&P 500 Index**

137.   In their Participant Fee Disclosure Notice, Defendants disclose to the Plan participants that the Washington Mutual Fund is benchmarked to the S&P 500 Index. In its Registration Statement filed with the U.S. Securities and Exchange Commission on Form N-1A, the Fund also discloses it is benchmarked to the S&P 500.

138.   By disclosing the S&P 500 Index to Plan participants and public investors at large as the appropriate benchmark for the Washington Mutual Fund, Defendants necessarily concluded that the S&P 500 Index was, in fact, "representative of the investment option" and thus shared similar aims, risks, and rewards. By virtue of the similarities in their respective market capitalizations, the S&P 500 Index and the Washington Mutual Fund share similar aims, rewards, and levels of risk, including market risk and issuer risk. This makes the S&P 500 Index a meaningful benchmark for the Washington Mutual Investors Fund.

139.    According to Morningstar, from January 1, 2014, through March 31, 2024, the Washington Mutual R6 Fund underperformed the S&P 500 Index by 36 percentage points – 244% versus 208%.

**E.    Capital World Growth and Income Fund**

140.    The Capital World Growth and Income Fund's investment objective is to provide long-term growth of capital while providing current income. The Fund invests primarily in common stocks of well-established companies located around the world, many of which have the potential to pay dividends. Under normal market circumstances, the Fund will invest a significant portion of its assets in securities of issuers domiciled in a number of countries outside the United States, and such investments may include securities domiciled in developing countries.

141.    Capital Group and Morningstar identify the Capital World Growth and Income Fund as a global large-cap blend fund. Currently, 80% of the Capital World Growth and Income Fund's portfolio is invested in large-cap stocks. Approximately 44% of the Capital World Growth and Income Fund's assets are invested in U.S. stocks and approximately 51% are invested in non-U.S. stocks. The remainder is invested in fixed income, cash, and cash equivalents.

142.    The Capital World Growth and Income Fund's potential rewards are that the Fund will generate positive investment returns that outperform its

benchmark index. The Capital World Growth and Income Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) investing in growth-oriented stocks, income-oriented stocks, and international stocks. Also, the Capital World Growth and Income Fund, as an actively managed fund, is exposed to active management risk.

i.    **Comparator 1:  Russell Investments Global Equity Fund**

143.    The Russell Investments Global Equity Fund has similar aims, risks, and potential rewards to those of the Capital World Growth and Income Fund.

144.    The Russell Investments Global Equity Fund's aim is to provide long-term capital growth. The Fund principally invests in stocks of companies located around the world, including the United States. The Fund may invest a portion of its assets in stocks of companies that are economically tied to emerging market countries. The Fund blends growth, market-oriented, and value styles and invests principally in mid- and large-cap stocks.

145.    Morningstar refers to the Russell Investments Global Equity Fund as a global large cap blend fund. 83% of the Russell Investments Global Equity Fund's portfolio is invested in large-cap stocks. Approximately 46% of the Russell Investments Global Equity Fund's assets are invested in U.S. stocks and approximately 49% are invested in non-U.S. stocks. The remainder is invested in cash and cash equivalents.

146.    The Russell Investments Global Equity Fund's potential rewards are that the Fund will generate positive investment returns that outperform its benchmark index. The Russell Investments Global Equity Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) investing in growth-oriented stocks, income-oriented stocks, and international stocks. Also, the Russell Investments Global Equity Fund, as an actively managed fund, is exposed to active management risk.

147.    Given the similarities in the two funds' investment strategies and the types of stocks the two funds own, the aims, risks, and potential rewards of the Russell Investments Global Equity Fund are similar to those of the Capital World Growth and Income Fund. This makes the Russell Investments Global Equity Fund a meaningful comparator.

**ii.      Comparator 2:  Victory RS Global Fund**

148.    The Victory RS Global Fund has similar aims, risks, and potential rewards to those of the Capital World Growth and Income Fund.

149.    The Victory RS Global Fund seeks long-term capital appreciation. The Victory RS Global Fund normally invests at least 80% of the value of its net assets in common stocks, preferred stocks, and other securities convertible into common or preferred stock of publicly traded companies across the world. The Victory RS Global Fund invests in companies located in at least three different countries,

including the United States. The Fund normally will invest 40% or more of its total assets in securities of non-U.S. companies.

150.    Morningstar identifies the Victory RS Global Fund as a global large-cap blend fund. According to Morningstar, 77% of the Victory RS Global Fund's portfolio is invested in large-cap stocks. Approximately 60% of the Victory RS Global Fund's assets are invested in U.S. stocks and approximately 37% are invested in non-U.S. stocks. The remainder is invested in cash and cash equivalents.

151.    The Victory RS Global Fund's potential rewards are that the Fund will generate investment returns that outperform its benchmark index. The Victory RS Global Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) investing in international stocks. Also, the Victory RS Global Fund, as an actively managed fund, is exposed to active management risk.

152.    Given the similarities in the two funds' investment strategies and the types of stocks the two funds own, the aims, risks, and potential rewards of the Victory RS Global Fund are similar to those of the Capital World Growth and Income Fund. This makes the Victory RS Global Fund a meaningful comparator.

**iii.    Comparator 3:  DFA Global Equity I**

153.    The DFA Global Equity Fund has similar aims, risks, and potential rewards to those of the Capital World Growth and Income Fund.

154.   The investment objective of the Global Equity Fund is to achieve long-term capital appreciation. The Global Equity Fund is a "fund of funds," which means that it generally allocates its assets among other funds managed by DFA, although it has the ability to invest directly in securities and derivatives. The Fund normally allocates its assets to underlying funds that invest in domestic and international equity securities. It further diversifies its investment portfolio by allocating its assets among underlying funds that represent a variety of different asset classes, such as large-capitalization, small-capitalization, and emerging markets stocks, as well as real estate securities.

155.   Morningstar refers to the DFA Global Equity Fund as Global Large-cap Blend Fund. 82% of the DFA Global Equity Fund's assets are invested in large- and mid-cap stocks. Approximately 68% of the DFA Global Equity Fund's assets are invested in U.S. stocks and approximately 31% are invested in non-U.S. stocks. The remainder is invested in cash and cash equivalents.

156.   The DFA Global Equity Fund's potential rewards are to generate investment returns that outperform its benchmark index. The DFA Global Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) investing in growth-oriented stocks and international stocks. Also, the DFA Equity Fund, as an actively managed fund, is exposed to active management risk.

157.   Given the similarities in the two funds' investment strategies and the types of stocks the two funds own, the aims, risks, and potential rewards of the DFA Global Equity Fund are similar to those of the Capital World Growth and Income Fund. This makes the DFA Global Equity Fund a meaningful comparator.

**iv.    Comparator 4:  MSCI ACWI**

158.   In their Participant Fee Disclosure Notice, Defendants disclose to the Plan participants that the World Growth and Income Fund is benchmarked to the MSCI ACWI. In its Registration Statement filed with the U.S. Securities and Exchange Commission on Form N-1A, the Fund also discloses it is benchmarked to the MSCI ACWI.

159.   By disclosing the MSCI ACWI to Plan participants and public investors at large as the appropriate benchmark for the World Growth and Income Fund, the Defendants necessarily concluded that the MSCI ACWI was, in fact, representative of the investment option and thus shared similar aims, risks, and rewards. By virtue of the similarities in their respective market capitalizations, the MSCI ACWI and the World Growth and Income Fund share similar aims, rewards, and levels of risk, including market risk and issuer risk. This makes the MSCI ACWI a meaningful benchmark for the World Growth and Income Fund.

160.    According to Morningstar, from January 1, 2014, through March 31, 2024, the World Growth and Income R6 Fund underperformed the MSCI ACWI by 7 percentage points – 132% versus 125%.

## VIII.  THE AMERICAN FUNDS UNDERPERFORMED THEIR BENCHMARKS AND COMPARATOR FUNDS FOR OVER A DECADE

161.    Defendants were required by law to monitor the funds with the skill of a prudent expert to determine whether their investment performance remained in line with meaningful investment comparators.

162.    For a prudent fiduciary, investment options that, on average, underperform their benchmarks over rolling 3- or 5-year periods are generally candidates for removal. Typically, such guidelines are outlined in a plan's investment policy statement or in a pension consultant's recommendations.

163.    Had the Capital Group Defendants fulfilled their duty with the care and skill of a prudent fiduciary, they would have seen in real time that each of the American Funds had significantly underperformed their benchmark indexes and the Comparator Funds for over five years, as described below.

164.    In the period from January 1, 2014 through June 30, 2019, the poor performance of the five American Funds cost the Plan millions of dollars in lost retirement savings when compared to the investment performance of their respective Comparator Funds.

165.    Any fiduciary properly monitoring the Plan would have seen that the poor performance warranted the selection of new options.

166.    Instead, Capital Group continued its devotion to its proprietary America Funds and the fee income they generated. For reasons that defy any prudent explanation, Capital Group failed to replace any of the American Funds with any one of the many prudent alternatives.

167.    Each American Fund has continued to perform below its benchmark, capping nearly a decade of poor performance.

168.    **Tables 1.a, 2.a, 3.a, 4.a, and 5.a** below demonstrate the underperformance of each American Fund compared to its respective index and to the Comparator Funds for the five-and-one-half-year period from January 1, 2014 through June 30, 2019.

169.    **Tables 1.b, 2.b, 3.b, 4.b, and 5.b** below demonstrate the underperformance of each American Fund compared to the S&P 500 Index, the Russell 1000 Growth Index, and the MSCI ACWI Index, as applicable, and to the Comparator Funds on both an annualized and cumulative basis from July 1, 2019 through March 31, 2024.

170.    The annualized performance numbers in **Tables 1.b, 2.b, 3.b, 4.b, and 5.b** highlight the underperformance of the American Funds. When the American Funds occasionally outperformed their respective benchmarks, the outperformance

was overshadowed by the multiple years in which the American Funds underperformed these benchmarks. The significance of this underperformance is captured by the cumulative numbers in these tables.

171.  Together, **Tables 1.a and 1.b, 2.a and 2.b, 3.a and 3.b, 4.a and 4.b., and 5.a and 5.b** capture the depth and the breadth of the American Funds' underperformance relative to meaningful benchmarks that has persisted for nearly a decade.

172.  **Tables 1.c., 2.c, 3.c, 4.c, and 5.c** below quantify the monetary impact of Capital Group's decision by comparing the growth of an investment in each American Fund to that of each respective benchmark index and Comparator Fund from July 1, 2019 through March 31, 2024.

173.  All the data presented in each of the Tables in this Complaint was available in real time to the Capital Group Defendants throughout the Class Period.

174.  The Comparator Funds listed in each of the Tables below are managed by reputable investment advisers with significant assets under management and are available to all large retirement plans, including Capital Group's Plan. Capital Group would not have had to scour the market to find them.

175.  The overall depth of the American Funds' underperformance raises a plausible inference that Capital Group's monitoring process was tainted by a lack of loyalty and complete failure of effort.

176.    Plaintiff did not have knowledge of all material facts (including, among other things, comparisons of the Plan's investment performance relative to other available investment alternatives) necessary to understand that the Capital Group Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA until shortly before filing this Complaint. Further, Plaintiff did not have actual knowledge of the specifics of the Capital Group Defendants' decision-making processes with respect to the Plan, including the Capital Group Defendants' processes for monitoring and removing Plan investments, because this information is solely within the possession of the Capital Group Defendants prior to discovery. For purposes of this Complaint, Plaintiff has drawn reasonable inferences regarding these processes based upon (among other things) the facts set forth herein.

**AMCAP Fund**

**Table 1.a**
**January 1, 2014 – June 30, 2019**

| Fund | Cumulative Return | Annualized Return |
|---|---|---|
| American Funds AMCAP R6 | 74.34% | 10.63% |
| S&P 500 TR | 78.20% | 11.08% |
| Russell 1000 Growth TR | 99.28% | 13.36% |
| American Century Growth R6 | 93.02% | 12.70% |
| Delaware Ivy Large Cap Growth R6 | 100.15% | 13.45% |
| MFS Massachusetts Inv Gr Stk R6 | 94.26% | 12.83% |

177.    **Table 1.b** below illustrates the underperformance of the AMCAP Fund from July 1, 2019 through March 31, 2024, on an annualized and cumulative basis relative to the S&P 500 Index, the Russell 1000 Growth Index, and Comparator Funds. The AMCAP Fund underperformed the S&P 500 Index by 22% during this period, and in 2022 alone, it underperformed the S&P 500 Index by over 10%.

**Table 1.b**
**July 1, 2019 – March 31, 2024**

| Fund | Annualized Performance | | | | | | Cumulative Compounded Performance |
|---|---|---|---|---|---|---|---|
| | **2019** | **2020** | **2021** | **2022** | **2023** | **YTD** | |
| American Funds AMCAP R6[3] | 8.93% | 21.79% | 24.07% | -28.53% | 31.41% | 10.81% | 71.30% |
| S&P 500 TR | 10.92% | 18.40% | 28.71% | -18.11% | 26.29% | 10.56% | 93.26% |
| *+/- American Funds* | *-1.99%* | *3.39%* | *-4.64%* | *-10.42%* | *5.12%* | *0.25%* | *-21.96%* |
| Russell 1000 Growth TR | 12.27% | 38.49% | 27.60% | -29.14% | 42.68% | 11.41% | 123.48% |
| *+/- American Funds* | *-3.34%* | *-16.70%* | *-3.53%* | *0.61%* | *-11.27%* | *-0.60%* | *-52.18%* |
| American Century Growth R6 | 11.04% | 35.67% | 27.93% | -31.20% | 43.78% | 11.99% | 113.52% |

---

[3] In 2021, the Plan added the Capital Group AMCAP Trust Class U2. The difference in investment returns between the two funds is three basis points (0.03%) in 2022 and two basis points (0.02%) in 2023 in favor of the AMCAP Trust. Nevertheless, for simplicity, the annual and cumulative performance calculations shown in Tables 1.b and 1.c are those of the AMCAP R6 Fund.

| +/- American Funds | -2.11% | -13.88% | -3.86% | 2.67% | -12.37% | -1.18% | -42.22% |
| Delaware Ivy Large Cap Growth R6 | 10.38% | 31.19% | 30.57% | -26.77% | 38.23% | 9.71% | 109.97% |
| +/- American Funds | -1.45% | -9.40% | -6.50% | -1.76% | -6.82% | 1.10% | -38.67% |
| MFS Massachusetts Inv Gr Stk R6 | 12.77% | 22.84% | 26.66% | -18.95% | 24.46% | 8.20% | 91.50% |
| +/- American Funds | -3.84% | -1.05% | -2.59% | -9.58% | 6.95% | 2.61% | -20.20% |

178. As of June 30, 2019, the assets of the AMCAP Fund were approximately $182 million. **Table 1.c** below compares the investment growth of $182 million invested in the AMCAP Fund to the growth of $182 million from the S&P 500 Index, the Russell 1000 Growth Index, and each of the Comparator Funds from July 1, 2019, through March 31, 2024.

**Table 1.c**
**July 1, 2019 – March 31, 2024**

| Fund Name | Compounded Performance | Annualized Performance | Growth of $182 Million |
|---|---|---|---|
| American Funds AMCAP R6 | 71.30% | 12.00% | $311.8 million |
| S&P 500 TR | 93.26% | 14.88% | $351.7 million |
| *+/- American Funds* | *-21.96%* | *-2.88%* | *-$39.9 million* |
| Russell 1000 Growth TR | 123.48% | 18.45% | $406.7 million |
| *+/- American Funds* | *-52.18%* | *-6.45%* | *-$94.9 million* |
| American Century Growth R6 | 113.52% | 17.32% | $388.6 million |
| *+/- American Funds* | *-42.22%* | *-5.32%* | *-$76.8 Million* |
| Delaware Ivy Large Cap Growth R6 | 109.97% | 16.90% | $382.2 million |
| *+/- American Funds* | *-38.67%* | *-4.90%* | *-$70.4 million* |
| MFS Massachusetts Inv Gr Stk R6 | 91.50% | 14.66% | $348.5 million |
| *+/- American Funds* | *-20.20%* | *-2.66%* | *-$36.7 million* |

**Fundamental Investors Fund**

**Table 2.a**
**January 1, 2014 – June 30, 2019**

| Fund | Cumulative Return | Annualized Return |
|---|---|---|
| American Funds Fundamental Invs R6 | 70.87% | 10.23% |
| S&P 500 TR | 78.20% | 11.08% |
| GMO Quality R6 | 90.65% | 12.45% |
| Vanguard PRIMECAP Adm | 94.28% | 12.83% |
| Wellington CIF II Large Cap Research Eq | 78.98% | 11.16% |

179.   **Table 2.b** below illustrates the underperformance of the Fundamental Investors Fund from July 1, 2019 through March 31, 2024, on an annualized and cumulative basis relative to the S&P 500 Index and Comparator Funds. The Fundamental Investors Fund underperformed the S&P 500 Index by nearly 8% during this period.

**Table 2.b**
**July 1, 2019 – March 31, 2024**

| Fund | Annualized Performance | | | | | | Cumulative Compounded Performance |
|---|---|---|---|---|---|---|---|
| | 2019 | 2020 | 2021 | 2022 | 2023 | YTD | |
| American Funds Fundamental Invs R6[4] | 11.06% | 15.30% | 22.88% | -16.40% | 26.26% | 11.58% | 85.33% |
| S&P 500 TR | 10.92% | 18.40% | 28.71% | -18.11% | 26.29% | 10.56% | 93.26% |
| *+/- American Funds* | *0.14%* | *-3.10%* | *-5.83%* | *1.71%* | *-0.03%* | *1.02%* | *-7.93%* |
| GMO Quality R6 | 12.16% | 18.49% | 26.22% | -15.22% | 29.99% | 10.84% | 104.89% |
| *+/- American Funds* | *-1.10%* | *-3.19%* | *-3.34%* | *-1.18%* | *-3.73%* | *0.74%* | *-19.56%* |
| Vanguard PRIMECAP Adm | 12.96% | 17.32% | 21.90% | -15.09% | 28.18% | 9.17% | 91.96% |

[4] In 2021, the Plan added the Capital Group Fundamental Investors Trust CL U2. The difference in investment returns between the two funds is three basis points (0.03%) in 2022 and thirteen basis points (0.13%) in 2023 in favor of the Fundamental Investors Trust. Nevertheless, for simplicity, the annual and cumulative performance calculations shown in Tables 2.b and 2.c are those of the Fundamental Investors R6 Fund.

| +/- American Funds | -1.90% | -2.02% | 0.98% | -1.31% | -1.92% | 2.41% | -6.63% |
|---|---|---|---|---|---|---|---|
| Wellington CIF II Large Cap Research Eq | 10.09% | 23.40% | 25.59% | -18.39% | 26.26% | 11.17% | 95.45% |
| +/- American Funds | 0.97% | -8.10% | -2.71% | 1.99% | 0.00% | 0.41% | -10.12% |

180.    As of June 30, 2019, the assets of the Fundamental Investors Fund were approximately $201 million. **Table 2.c** below compares the investment growth of $201 million invested in the Fundamental Investors Fund to the growth of $201 million from the S&P 500 Index and each of the Comparator Funds from July 1, 2019 through March 31, 2024.

### Table 2.c
### July 1, 2019 – March 31, 2024

| Fund Name | Compounded Performance | Annualized Performance | Growth of $201 Million |
|---|---|---|---|
| American Funds Fundamental Invs R6 | 85.33% | 13.87% | $372.5 million |
| S&P 500 TR | 93.26% | 14.88% | $388.4 million |
| *+/- American Funds* | *-7.93%* | *-1.01%* | *-$15.9 million* |
| GMO Quality R6 | 104.89% | 16.30% | $411.8 million |
| *+/- American Funds* | *-19.56%* | *-2.43%* | *-$39.3 million* |
| Vanguard PRIMECAP Adm | 91.96% | 14.72% | $385.8 million |
| *+/- American Funds* | *-6.63%* | *-0.85%* | *-$13.3 million* |
| Wellington CIF II Large Cap Research Eq | 95.45% | 15.15% | $392.9 million |
| *+/- American Funds* | *-10.12%* | *-1.28%* | *-$20.4 million* |

**Investment Company of America Fund**

**Table 3.a**
**January 1, 2014 – June 30, 2019**

| Fund | Cumulative Return | Annualized Return |
|---|---|---|
| American Funds Invmt Co of Amer R6 (RICGX) | 63.83% | 9.39% |
| S&P 500 TR | 78.20% | 11.08% |
| Vanguard Growth and Income Admiral (VGIAX) | 76.80% | 10.92% |
| T. Rowe Price Structured Research Tr-Z | 85.86% | 11.93% |
| JPMorgan U.S. Equity R6 | 73.67% | 10.56% |

181.   **Table 3.b** below illustrates the underperformance of the Investment Company of America Fund from July 1, 2019 through March 31, 2024, on an annualized and cumulative basis relative to the S&P 500 Index and Comparator Funds. The Investment Company of America Fund underperformed the S&P 500 Index by almost 3%.

**Table 3.b**
**July 1, 2019 – March 31, 2024**

| Fund | Annualized Performance | | | | | | Cumulative Compounded Performance |
|---|---|---|---|---|---|---|---|
| | 2019 | 2020 | 2021 | 2022 | 2023 | YTD | |
| American Funds Invmt Co of Amer R6 (RICGX) | 9.61% | 14.85% | 25.40% | -15.26% | 28.88% | 10.52% | 90.56% |
| S&P 500 TR | 10.92% | 18.40% | 28.71% | -18.11% | 26.29% | 10.56% | 93.26% |
| *+/- American Funds* | *-1.31%* | *-3.55%* | *-3.31%* | *2.85%* | *2.59%* | *-0.04%* | *-2.70%* |
| Vanguard Growth and Income Admiral (VGIAX) | 10.44% | 18.08% | 29.11% | -17.11% | 24.76% | 12.44% | 95.79% |
| *+/- American Funds* | *-0.83%* | *-3.23%* | *-3.71%* | *1.85%* | *4.12%* | *-1.92%* | *-5.23%* |
| T. Rowe Price Structured Research Tr-Z | 11.19% | 21.02% | 28.68% | -18.42% | 30.35% | 11.70% | 105.69% |

| +/- American Funds | -1.58% | -6.17% | -3.28% | 3.16% | -1.47% | -1.18% | -15.13% |
| JPMorgan U.S. Equity R6 | 11.32% | 26.74% | 28.80% | -18.77% | 27.35% | 11.22% | 109.09% |
| +/- American Funds | -1.71% | -11.89% | -3.40% | 3.51% | 1.53% | -0.70% | -18.53% |

182.    As of June 30, 2019, the assets of the Investment Company of America Fund were approximately $114 million. **Table 3.c** below compares the investment growth of $114 million invested in the Investment Company of America Fund to the growth of $114 million from the S&P 500 Index and each of the Comparator Funds from July 1, 2019, through March 31, 2024.

**Table 3.c**
**July 1, 2019 – March 31, 2024**

| Fund Name | Compounded Performance | Annualized Performance | Growth of $114 Million |
|---|---|---|---|
| American Funds Invmt Co of Amer R6 | 90.56% | 14.54% | $217.2 million |
| S&P 500 TR | 93.26% | 14.88% | $220.3 million |
| *+/- American Funds* | *-2.70%* | *-0.34%* | *-$3.1 million* |
| Vanguard Growth and Income Admiral (VGIAX) | 95.79% | 15.19% | $223.2 million |
| *+/- American Funds* | *-5.23%* | *-0.65%* | *-$6.0 million* |
| T. Rowe Price Structured Research Tr-Z | 105.69% | 16.40% | $234.5 million |
| *+/- American Funds* | *-15.13%* | *-1.86%* | *-$17.3 million* |
| JPMorgan U.S. Equity R6 | 109.09% | 16.80% | $238.4 million |
| *+/- American Funds* | *-18.53%* | *-2.26%* | *-$21.2 million* |

**Washington Mutual Fund**

**Table 4.a**
**January 1, 2014 – June 30, 2019**

| Fund | Cumulative Return | Annualized Return |
|---|---|---|
| American Funds Washington Mutual R6 | 71.37% | 10.29% |
| S&P 500 TR | 78.20% | 11.08% |
| JPMCB U.S. Active Core Equity Inv | 80.58% | 11.34% |
| Goldman Sachs Large Cap Core R6 | 85.05% | 11.84% |
| Touchstone Large Cap Focused R6 | 73.75% | 10.57% |

183.    **Table 4.b** below illustrates the underperformance of the Washington Mutual Fund from July 1, 2019 through March 31, 2024, on an annualized and cumulative basis relative to the S&P 500 Index and Comparator Funds. The Washington Mutual Fund underperformed the S&P 500 Index by over 13%.

**Table 4.b**
**July 1, 2019 – March 31, 2024**

| Fund | Annualized Performance | | | | | | Cumulative Compounded Performance |
|---|---|---|---|---|---|---|---|
| | **2019** | **2020** | **2021** | **2022** | **2023** | **YTD** | |
| American Funds Washington Mutual R6[5] | 9.50% | 8.08% | 28.90% | -8.18% | 17.59% | 9.20% | 79.86% |
| S&P 500 TR | 10.92% | 18.40% | 28.71% | -18.11% | 26.29% | 10.56% | 93.26% |
| *+/- American Funds* | *-1.42%* | *-10.32%* | *0.19%* | *9.93%* | *-8.70%* | *-1.36%* | *-13.40%* |
| JPMCB U.S. Active Core Equity Inv | 11.42% | 27.37% | 29.03% | -18.36% | 27.91% | 11.30% | 112.81% |
| *+/- American Funds* | *-1.92%* | *-19.29%* | *-0.13%* | *10.18%* | *-10.32%* | *-2.10%* | *-32.95%* |
| Goldman Sachs Large | 10.10% | 23.27% | 25.11% | -19.60% | 26.93% | 9.85% | 90.38% |

---

[5] In 2022, the Plan added the Capital Group Washington Mutual Trust Class U2. The difference in investment returns between the two funds is two basis points (0.02%) in favor of the Washington Mutual Trust in 2022, and four basis points (0.04%) in favor of the Washington Mutual R6 Fund in 2023. Nevertheless, for simplicity, the annual and cumulative performance calculations shown in Tables 4.b and 4.c are those of the Washington Mutual R6 Fund.

| Cap Core R6 | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| *+/- American Funds* | *-0.60%* | *-15.19%* | *3.79%* | *11.42%* | *-9.34%* | *-0.65%* | *-10.52%* |
| Touchstone Large Cap Focused R6 | 10.76% | 23.83% | 25.37% | -17.27% | 25.45% | 8.19% | 93.06% |
| *+/- American Funds* | *-1.26%* | *-15.75%* | *3.53%* | *9.09%* | *-7.86%* | *1.01%* | *-13.20%* |

184.   As of June 30, 2019, the assets of the Washington Mutual Fund were approximately $166 million. **Table 4.c** below compares the growth of $166 million invested in the Washington Mutual Fund to the growth of $166 million from the S&P 500 Index and each of the Comparator Funds from July 1, 2019 through March 31, 2024.

**Table 4.c**
**July 1, 2019 – March 31, 2024**

| Fund Name | Compounded Performance | Annualized Performance | Growth of $166 Million |
|---|---|---|---|
| American Funds Washington Mutual R6 | 79.86% | 13.15% | $298.6 million |
| S&P 500 TR | 93.26% | 14.88% | $320.8 million |
| *+/- American Funds* | *-13.40%* | *-1.73%* | *-$22.2 million* |
| JPMCB U.S. Active Core Equity Inv | 112.81% | 17.23% | $353.3 million |
| *+/- American Funds* | *-32.95%* | *-4.08%* | *-$54.7 million* |
| Goldman Sachs Large Cap Core R6 | 90.38% | 14.52% | $316.0 million |
| *+/- American Funds* | *-10.52%* | *-1.37%* | *-$17.4 million* |
| Touchstone Large Cap Focused R6 | 93.06% | 14.85% | $320.5 million |
| *+/- American Funds* | *-13.20%* | *-1.70%* | *-$21.9 million* |

**World Growth and Income Fund**

**Table 5.a**
**January 1, 2014 – June 30, 2019**

| Fund | Cumulative Return | Annualized Return |
|---|---|---|
| American Funds Capital World Gr&Inc R6 (RWIGX) | 42.46% | 6.65% |
| MSCI ACWI NR | 43.18% | 6.74% |
| Russell Inv Global Equity Y (RLGYX) | 45.61% | 7.07% |
| Victory RS Global R6 (RGGRX) | 63.25% | 9.32% |
| DFA Global Equity I (DGEIX) | 44.19% | 6.88% |

185.    **Table 5.b** below illustrates the underperformance of the World Growth and Income Fund from July 1, 2019 through March 31, 2024, on an annualized and cumulative basis relative to the MSCI ACWI Index and Comparator Funds. The World Growth and Income Fund underperformed the MSCI ACWI Index by over 4%.

**Table 5.b**
**July 1, 2019 – March 31, 2024**

| Fund | Annualized Performance | | | | | | Cumulative Compounded Performance |
|---|---|---|---|---|---|---|---|
| | 2019 | 2020 | 2021 | 2022 | 2023 | YTD | |
| American Funds Capital World Gr&Inc R6[6] | 8.75% | 15.78% | 15.15% | -17.01% | 21.22% | 8.27% | 57.93% |
| MSCI ACWI NR | 8.92% | 16.25% | 18.54% | -18.36% | 22.20% | 8.20% | 62.02% |
| *+/- American Funds* | *-0.17%* | *-0.47%* | *-3.39%* | *1.35%* | *-0.98%* | *0.07%* | *-4.09%* |
| Russell Inv Global Equity Y (RLGYX) | 10.05% | 13.75% | 22.77% | -16.42% | 22.72% | 9.00% | 71.83% |
| *+/- American Funds* | *-1.30%* | *2.03%* | *-7.62%* | *-0.59%* | *-1.50%* | *-0.73%* | *-13.90%* |

---

[6] In 2021, the Plan added the World Growth and Income Trust Class U2. The difference in investment returns between the two funds is two basis points (0.02%) in favor of the World Growth and Income R6 Fund in 2022; there was no difference in investment returns in 2023. For simplicity, the annual and cumulative performance calculations shown in Tables 5.b and 5.c are those of the World Growth and Income R6 Fund.

| Victory RS Global R6 (RGGRX) | 10.80% | 17.27% | 22.84% | -18.81% | 27.02% | 8.61% | 78.79% |
|---|---|---|---|---|---|---|---|
| *+/- American Funds* | *-2.05%* | *-1.49%* | *-7.69%* | *1.80%* | *-5.80%* | *-0.34%* | *-20.86%* |
| DFA Global Equity I (DGEIX) | 9.18% | 13.49% | 23.20% | -14.70% | 20.29% | 8.13% | 69.38% |
| *+/- American Funds* | *-0.43%* | *2.29%* | *-8.05%* | *-2.31%* | *0.93%* | *0.14%* | *-11.45%* |

186.    As of June 30, 2019, the assets of the World Growth and Income Fund were approximately $170 million. **Table 5.c** below compares the growth of $170 million invested in the World Growth and Income Fund to the growth of $170 million from the MSCI ACWI Index and each of the Comparator Funds from July 1, 2019 through March 31, 2024.

**Table 5.c**
**July 1, 2019 – March 31, 2024**

| Fund Name | Compounded Performance | Annualized Performance | Growth of $170 Million |
|---|---|---|---|
| American Funds Capital World Gr&Inc R6 | 57.93% | 10.10% | $268.5 million |
| MSCI ACWI NR | 62.02% | 10.69% | $275.4 million |
| *+/- American Funds* | *-4.09%* | *-0.59%* | *-$6.9 million* |
| Russell Inv Global Equity Y (RLGYX) | 71.83% | 12.07% | $292.1 million |
| *+/- American Funds* | *-13.90%* | *-1.97%* | *-$23.6 million* |
| Victory RS Global R6 (RGGRX) | 78.79% | 13.01% | $303.9 million |
| *+/- American Funds* | *-20.86%* | *-2.91%* | *-$35.4 million* |
| DFA Global Equity I (DGEIX) | 69.38% | 11.73% | $287.9 million |
| *+/- American Funds* | *-11.45%* | *-1.63%* | *-$19.4 million* |

## IX.    CLASS ACTION ALLEGATIONS

187.    29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the plan under 29 U.S.C. § 1109(a).

188.    In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to a direct individual action on behalf of the Plan under 29 U.S.C. §1132(a)(2) and (3), Plaintiff seeks to certify this action as a class action on behalf of participants and beneficiaries of the Plan. Specifically, Plaintiff seeks to certify, and to be appointed as representative of, the following class:

> All participants and beneficiaries of the Plan who invested in any of the American Funds from July 1, 2019 through the date of judgment, excluding the Capital Group Defendants, any of their directors, and any officers or employees of the Capital Group Defendants with responsibility for the Plan's investment or administrative function.

189.    This action meets the requirements of Rule 23 and is certifiable as a class action for the following reasons:

> a.    The Class includes thousands of members and is so large that joinder of all its members is impracticable.
>
> b.    There are numerous questions of law and fact common to this Class because the Capital Group Defendants owed the same fiduciary duties to the Plan and to all participants and beneficiaries and took a common

course of actions and omissions as alleged herein as to the Plan, and not as to any individual participant, that affected all Class members through their participation in the Plan in the same way. Thus, questions of law and fact common to the Class include, without limitation, the following: (i) whether each of the Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. §1109(a); (ii) whether the fiduciaries of the Plan breached their fiduciary duties to the Plan by employing an imprudent and/or disloyal process for monitoring and evaluating Plan investment options; (iii) whether Plaintiff's claims of an imprudent and/or disloyal process require similar inquiries and proof of the claims and therefore implicate the same set of concerns for all proposed members of the Class; (iv) what are the losses to the Plan resulting from each breach of fiduciary duty; and (v) what Plan-wide equitable and other relief the Court should impose in light of the Capital Group Defendants' breach of duties.

c.  Plaintiff's claims are typical of the claims of the Class because Plaintiff was a participant during the Class Period and all participants in the Plan were harmed by the Capital Group Defendants' misconduct.

d.  Plaintiff is an adequate representative of the Class because she participated in the Plan during the Class Period, has no interest that

conflicts with the Class, is committed to the vigorous representation of the Class, and has engaged experienced and competent attorneys to represent the Class.

e.  There are no substantial individualized questions of law or fact among Class members on the merits of this Action.

190.  Prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Capital Group Defendants in respect to the discharge of their fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a). Moreover, adjudications by individual participants and beneficiaries regarding the alleged breaches of fiduciary duties, and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests. Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

191.  Additionally, or in the alternative, certification under Rule 23(b)(2) is appropriate because the Capital Group Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

Plaintiff seeks reformation of the Plan to make it a more viable retirement investment option, which will benefit her and other Plan participants.

192.   Additionally, or in the alternative, this action may be certified as a class under Rule 23(b)(3). A class action is the superior method for the fair and efficient adjudication of this controversy because joinder of all participants and beneficiaries is impracticable, the losses suffered by individual participants and beneficiaries may be small and it is impracticable for individual members to enforce their rights through individual actions, and the common questions of law and fact predominate over individual questions. Given the nature of the allegations, no Class member has an interest in individually controlling the prosecution of this matter, and Plaintiff is aware of no difficulties likely to be encountered in the management of this matter as a class action.

193.   Additionally, or alternatively, this action may be certified as to particular issues under Rule 23(c)(4), including but not limited to the Defendants' liability to the Class for their allegedly imprudent conduct.

194.   Plaintiff's counsel will fairly and adequately represent the interests of the Class and is best able to represent the interests of the Class under Rule 23(g).

# CAUSES OF ACTION

## <u>COUNT I</u>

**Breach of Duty of Prudence by Mismanaging and Failing to Remove
Imprudent Investments from the Plan Within a Reasonable Time
(Violation of ERISA, 29 U.S.C. § 1104)
(Against All Capital Group Defendants)**

195.   All allegations set forth in the Complaint are realleged and incorporated herein by reference.

196.   Capital Group used the Plan as a strategic and financial benefit to recruit and retain workers.

197.   In joining Capital Group and subsequently enrolling in the Plan, employees trusted and relied on Capital Group's resources and expertise to construct and maintain a state-of-the-art 401(k) plan.

198.   At all relevant times during the Class Period, the Capital Group Defendants acted as fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A) by exercising authority and control with respect to the management of the Plan and its assets, and/or by rendering investment advice or by having authority or responsibility to render investment advice to the Plan; and/or were designated in the governing Plan document as a named fiduciary within the meaning of 29 U.S.C. § 1102(a).

199.   29 U.S.C. § 1104(a)(1)(B) requires a plan fiduciary to act with the "care, skill, prudence and diligence under the circumstances then prevailing that a

prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

200.    Thus, the scope of the fiduciary duties and responsibilities of the Capital Group Defendants includes administering the Plan with the care, skill, diligence, and prudence required by ERISA. The Capital Group Defendants are responsible for evaluating and monitoring the Plan's investments on an ongoing basis, eliminating imprudent investments, and taking all necessary steps to ensure the Plan's assets are invested prudently.

201.    The Capital Group Defendants breached their fiduciary duties through an imprudent process for investigating, evaluating, and monitoring investments. The faulty process resulted in a plan that included five American Funds that have suffered poor performance for nearly a decade. Capital Group Defendants failed to remove the American Funds within a reasonable time despite historical underperformance relative to other relevant benchmark indices.

202.    By failing to replace the American Funds with better-performing investment products for the Plan, the Capital Group Defendants failed to discharge their duties with the care, skill, prudence, and diligence that a prudent fiduciary acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

203.   The Capital Group Defendants' breach of fiduciary duty has substantially impaired the Plan's use, its value, and its investment performance for all Class members.

204.   As a direct and proximate result of the Capital Group Defendants' breaches of fiduciary duty, the Plan has suffered millions of dollars of damages which continue to accrue and for which the Capital Group Defendants are jointly and severally liable pursuant to 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), and 1109(a).

205.   Each of the Capital Group Defendants is liable to make good to the Plan as a whole the losses resulting from the aforementioned breaches and to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count. The Capital Group Defendants are subject to other plan-wide equitable or remedial relief as appropriate.

206.   Each Capital Group Defendant also participated in the breach of the other Capital Group Defendants, knowing that such acts were a breach, and enabled the other Capital Group Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties. Each Capital Group Defendant knew of the breach by the other Capital Group Defendants yet failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Capital Group Defendant is liable for the plan-wide losses caused by the breach of its co-fiduciary duties under 29 U.S.C. § 1105(a).

# COUNT II

**Breach of Duty of Loyalty by Mismanaging and Failing to Remove Imprudent Investments from the Plan Within a Reasonable Time (Violation of ERISA, 29 U.S.C. § 1104) (Against All Capital Group Defendants)**

207.    All allegations set forth in the Complaint are realleged and incorporated herein by reference.

208.    29 U.S.C. § 1104(a)(1)(A) requires a plan fiduciary to act "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

209.    Because the American Funds produced millions of dollars in annual fee revenue for the Capital Group Defendants, the Capital Group Defendants were inflicted with a conflict of interest when deciding whether to include or remove the American Funds as investment options for the Plan. Acting in their self-interest, rather than the best interests of the Plan and its participants, the Defendants retained poorly performing investment options that benefited Capital Group, rather than the Plan, despite the availability of superior – and readily available – investment alternatives as detailed herein. An unconflicted fiduciary, in possession of the same investment performance information, would have removed the American Funds as investment options in the Plan and replaced them with more prudent alternatives.

210.    Through these actions and omissions, the Defendants failed to discharge their duties with respect to the Plan: (A) solely in the interest of the

participants and beneficiaries of the Plan, and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

211.   As a direct and proximate result of these breaches, the Plan suffered substantial losses in the form of higher fees or lower returns on its investments than it would have otherwise experienced. Additionally and regardless of the losses incurred by the Plaintiff or any member of the Class, pursuant to ERISA §§ 502(a)(2) and (a)(3), and 409(a), 29 U.S.C. §§ 1132(a)(2) and (a)(3), and 1109(a), the Defendants and any non-fiduciary which knowingly participated in these breaches are liable to disgorge to the Plan all profits made as a result of these Defendants' breaches of the duty of loyalty.

## **COUNT III**

### **Failure to Monitor**
### **(Against All Capital Group Defendants)**

212.   All allegations set forth in the Complaint are realleged and incorporated herein by reference.

213.   The Capital Group Defendants had a duty to monitor the performance of each party to whom they delegated any fiduciary responsibilities. A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of Plan

assets, and must take prompt and effective action to protect the Plan and participants when they are not.

214.  To the extent any of the Capital Group Defendants' fiduciary responsibilities were delegated to another fiduciary, the Capital Group Defendants' monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently, loyally, and in compliance with governing Plan documents.

215.  The Capital Group Defendants breached their fiduciary monitoring duties by, among other things:

a.  failing to monitor their appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of their appointees' actions and omissions in violation of ERISA with respect to the Plan;

b.  failing to monitor their appointees' fiduciary process, which was imprudent, ridden with conflicts, and ignored governing Plan documents;

c.  failing to ensure that the monitored fiduciaries had a prudent process in place for evaluating and ensuring that investment options were prudent;

d.  failing to ensure that the monitored fiduciaries had a conflict-free process in place for evaluating and ensuring that investment options

were selected solely in the interests of Plan participants and did not constitute prohibited transactions; and

e. failing to remove appointees whose performance was inadequate in that they continued to allow investment options that were imprudent and otherwise violated ERISA to remain in the Plan, to the detriment of Plan participants' retirement savings.

216. Each fiduciary who delegated its fiduciary responsibilities likewise breached its fiduciary monitoring duty by, among other things:

a. failing to monitor their appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of their appointees' actions and omissions in violation of ERISA with respect to the Plan;

b. failing to monitor their appointees' fiduciary process, which was imprudent, ridden with conflicts, and ignored governing Plan documents;

c. failing to ensure that the monitored fiduciaries had a prudent process in place for evaluating and ensuring that investment options were prudent and selected in compliance with the Plan's Investment Policy Statement;

d.   failing to ensure that the monitored fiduciaries had a conflict-free process in place for evaluating and ensuring that investment options were selected solely in the interests of Plan participants and did not constitute prohibited transactions; and

e.   failing to remove appointees whose performance was inadequate in that they continued to allow investment options that were imprudent and otherwise violated ERISA to remain in the Plan, to the detriment of Plan participants' retirement savings.

217.   As a direct result of these breaches of the fiduciary duty to monitor, the Plan suffered substantial losses. Had Capital Group and the other delegating fiduciaries discharged their fiduciary monitoring duties, the Plan would not have suffered these losses.

## PRAYER FOR RELIEF

For these reasons, Plaintiff, on behalf of the Plan as a whole and all similarly situated Plan participants and beneficiaries, respectfully requests that the Court:

i)   find and adjudge that the Capital Group Defendants have breached their fiduciary duties, as described above;

ii)   find and adjudge that the Capital Group Defendants are personally liable to make good to the Plan the losses to the Plan as a whole resulting from

each breach of fiduciary duty, and to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty;

iii) order the Capital Group Defendants to make good to the Plan as a whole the losses resulting from each breach of fiduciary duty and to restore to the Plan any profits resulting from each breach of fiduciary duty;

iv) find and adjudge that the Capital Group Defendants are liable to the Plan for appropriate plan-wide equitable relief, including but not limited to restitution and disgorgement;

v) determine the method by which Plan losses under 29 U.S.C. § 1109(a) should be calculated;

vi) order the Capital Group Defendants to provide all accountings necessary to determine the amounts Defendants must make good to the Plan under 29 U.S.C.§ 1109(a);

vii) remove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

viii) impose surcharge against the Capital Group Defendants and in favor of the Plan all amounts involved in any transactions which such accounting reveals were improper, excessive, and/or in violation of ERISA;

ix) order the proceeds of any plan-wide recovery for the Plan to be allocated to the accounts of the Class members to make them whole for any injury

that they have suffered as a result of the breaches of ERISA in accordance with the Court's declaration;

x)  reform the Plan to include only prudent investments;

xi)  certify the Class, appoint the Plaintiff as a class representative, appoint Sanford Heisler Sharp, LLP as Class Counsel, and appoint Charles Field and Kevin Sharp as lead counsel for the Class;

xii) award to the Plaintiff and the Class their attorney's fees and costs under 29 U.S.C. § 1132(g)(1) and the common fund doctrine;

xiii) order the Capital Group Defendants to pay interest to the extent allowed by law; and

xiv) grant such other equitable or remedial relief as the Court deems appropriate.

Date: May 1, 2024                     Respectfully Submitted,


                                      */s/ Charles Field*
                                      _____
                                      Charles Field, CA Bar No. 189817
                                      Myounghee Choung, CA Bar No. 349839
                                      Hilary Rosenthal, CA Bar No. 332384
                                      **SANFORD HEISLER SHARP, LLP**
                                      7911 Herschel Avenue, Suite 300
                                      La Jolla, CA 92037
                                      Telephone: (619) 577-4253
                                      Facsimile: (619) 577-4250
                                      cfield@sanfordheisler.com
                                      dchoung@sanfordheisler.com
                                      hrosenthal@sanfordheisler.com

                                      Kevin Sharp, TN Bar No. 016287*
                                      Kristi McGregor, GA Bar No. 674012*
                                      **SANFORD HEISLER SHARP, LLP**
                                      611 Commerce Street, Suite 3100
                                      Nashville, TN 37203
                                      Telephone: (615) 434-7000
                                      Facsimile: (615) 434-7020
                                      ksharp@sanfordheisler.com
                                      kmcgregor@sanfordheisler.com

                                      Sharon Kim, NY Bar No. 5475561*
                                      **SANFORD HEISLER SHARP, LLP**
                                      17 State Street, Suite 3700
                                      New York, NY 10004
                                      Telephone: (646) 402-5650
                                      Facsimile: (646) 402-5651
                                      sharonkim@sanfordheisler.com

                                      Hampton Watson, MD Attorney
                                      Account No. 2306090002*
                                      **SANFORD HEISLER SHARP, LLP**
                                      111 S. Calvert Street, Suite 1950
                                      Baltimore, MD 21202

---

Telephone: (410) 834-7420
Facsimile: (410) 834-7425
hwatson@sanfordheisler.com

*Attorneys for Plaintiff*

*\* Pro hac vice application forthcoming*